*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0165p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DR. DALE THURMAN,

       *Plaintiff-Appellant,*

     *v.*

PFIZER, INC.,

       *Defendant-Appellee.*

No. 06-1571

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-72912—Victoria A. Roberts, District Judge.

Argued: February 2, 2007

Decided and Filed: May 8, 2007

Before: MARTIN, COLE, and GILMAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Thomas L. Kent, GREEN, GREEN, ADAMS & KENT, Ann Arbor, Michigan, for Appellant. James E. Bayles, Jr., MORGAN, LEWIS & BOCKIUS, Chicago, Illinois, for Appellee. **ON BRIEF:** Thomas L. Kent, GREEN, GREEN, ADAMS & KENT, Ann Arbor, Michigan, for Appellant. James E. Bayles, Jr., Sari M. Alamuddin, MORGAN, LEWIS & BOCKIUS, Chicago, Illinois, for Appellee.

---

## OPINION

---

     BOYCE F. MARTIN, JR., Circuit Judge. Dr. Dale Thurman filed suit against Pfizer, alleging that Pfizer misrepresented the monthly pension to which he would be entitled after five years of employment with the company. Thurman claims that these misrepresentations induced him to leave his prior job in order to work for Pfizer. Thurman initially sued in Michigan state court for rescission and to recover either expectation damages or reliance damages. After Pfizer removed the case to federal court, the district court dismissed the case, holding that Thurman's suit was preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, which does not provide the type of relief Thurman requested. We hold that the district court correctly ruled that Thurman's state-law claims were preempted to the extent that he requested expectation damages, which would require a calculation of plan benefits. However, we hold that the district court erred in its ruling with respect to Thurman's request for rescission of his participation in the plan and reliance damages in the form of benefits he relinquished by leaving his

1

prior job. These aspects of his state-law claims were not related to the plan, and were thus not preempted. Therefore, we **REVERSE** the district court's dismissal of Thurman's state-law claims to the extent that they are not related to the plan, and **REMAND** for further proceedings not inconsistent with this opinion.

## I.

On or about May 3, 2004, Pfizer hired Thurman as a Veterinary Pathologist. At the time of oral argument, he was still employed by Pfizer. Thurman alleges that during employment negotiations, the parties discussed the amount of Thurman's expected retirement benefits. According to his complaint, Pfizer's Recruiting Manager, Ruth Butts, orally informed Thurman that he would be eligible for full retirement at age 62 and would receive a monthly pension allowance of approximately $3,100 per month. In reliance on the benefits promised by Pfizer, Thurman left his former job in Ohio for the Pfizer position in Michigan. Shortly after he began working for Pfizer, Thurman was notified that the pension information he had received was incorrect. In fact, his monthly pension compensation would be approximately $816. After Thurman brought this issue to the attention of Pfizer, Human Resources told him in writing that "the incorrect benefit calculation that you were provided does not reflect a benefit to which you would be entitled based on your projected salary and years of service."[1]

On July 25, 2005, Thurman filed suit in Michigan state court alleging one count of fraudulent misrepresentation and one count of innocent misrepresentation. He claimed that but for the misrepresentations regarding his pension plan, he would not have resigned from his prior job, which offered higher annual compensation, stock options, and "other economic perquisites." Thurman's complaint requested relief "including, but not limited to amounts for loss of stock options, loss of salary, loss of benefits, moving expenses, and other consequential economic loss or in the alternative, to place Plaintiff in the position he would have been in had Defendant's representations been true by awarding Plaintiff damages representing the benefit of his bargain with Defendant." On August 1, 2005, Pfizer removed this action to federal district court based on diversity jurisdiction and federal question jurisdiction, and then moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). In support of its 12(b)(6) motion, Pfizer claimed that because Thurman's misrepresentation claims "related to" its ERISA-regulated Retirement Annuity Plan, they were preempted by ERISA. Pfizer noted that Thurman's suit (1) focused solely on misrepresentations concerning benefits in his pension plan; (2) requested rescission of his participation in the pension plan; and (3) requested damages representing the "benefit of his bargain" with Pfizer.

The district court granted Pfizer's motion to dismiss on October 25, 2005, holding that "the true nature of the issue underlying Plaintiff's misrepresentation claim involves benefits governed by an ERISA defined plan." The district court also noted that the fact that ERISA did not provide Thurman with his desired remedy did not prevent it from ruling that his claim was preempted. On November 3, 2005, Thurman filed a post-judgment motion pursuant to Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 60(b)(6), requesting that the district court grant relief from the judgment or amend the judgment to allow Thurman to amend his complaint. Specifically, Thurman requested that the court allow him to strike the phrase "damages representing the benefit of his bargain" from his request for relief in his complaint, believing that this phrase "was the only basis upon which the Court dismissed the Complaint," and that without this request, "it is clear that Plaintiff's action is not one for plan benefits." Thurman claimed that once this was stricken from the complaint, the district court would have to deny Pfizer's Rule 12(b)(6) motion on the grounds that Thurman's action did not seek to

---

[1] In this letter, Pfizer did not mention this fixed amount ($816/month). However, Pfizer has not disputed that this is the amount that Thurman was later informed he was actually entitled to. Therefore, we assume that this is an accurate estimate. *See* Fed. R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading.").

recover plan benefits, and therefore, could not be preempted by ERISA. Thus, Thurman believed that his ability to obtain relief was simply being "hampered by the existence of a pleading technicality." The district court denied his motion, finding that even with his requested amendment, Thurman's claim would still relate to the pension plan, and that it was therefore preempted by ERISA.

Thurman appeals, arguing that we should reverse the district court's order granting Pfizer's motion to dismiss. Alternatively, he requests that we reverse the district court's denial of his motion to amend his complaint.

The sole question we must address in this appeal is whether Thurman's claims are preempted under ERISA. At this point, we pass no judgment as to whether his misrepresentation claims will ultimately succeed on the merits. As explained below, we hold that the portions of Thurman's state-law claims requesting reliance damages and rescission of his participation in the plan are not preempted by ERISA.**2** Because our ruling is based on the language contained in Thurman's original complaint, we need not address the question of whether the district court abused its discretion in failing to allow Thurman to amend his complaint pursuant to Fed. R. Civ. P. 59(e) and 60(b).

## II.

We review de novo a district court's dismissal of a plaintiff's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). Dismissal under Rule 12(b)(6) is warranted if the plaintiff's complaint "fail[s] to state a claim upon which relief can be granted." *Id.* "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A district court considering a defendant's motion to dismiss under Rule 12(b)(6) must construe the complaint in the light most favorable to the plaintiff and accept the plaintiff's allegations as true. *Id.*

## III.

### A.

Thurman's complaint requests relief "including, but not limited to amounts for loss of stock options, loss of salary, loss of benefits, moving expenses, and other consequential economic loss or *in the alternative*, to place Plaintiff in the position he would have been in had Defendant's representations been true by awarding Plaintiff damages representing the benefit of his bargain with Defendant." (Emphasis added). In other words, Thurman originally requested reliance damages (the value of what he lost by transferring from his old job to Pfizer), or, *in the alternative*, expectation damages (the approximately $2,300/month difference between the pension benefits Pfizer promised him and those to which he is actually entitled under the plan). On appeal, Thurman no longer seeks expectation damages.

---

**2**Although Thurman's complaint also asked for the alternative remedy of expectation damages, on appeal he asks for only those damages he lost in reliance on Pfizer's alleged misrepresentation. Therefore, our opinion analyzes his claim for reliance damages only .

**i.**

Pfizer contends that Thurman should have sued for a breach of fiduciary duty under ERISA, and that this suit is merely such an ERISA claim disguised as state-law misrepresentation claims. Title 29 U.S.C. § 1132(a), ERISA's civil-enforcement section, provides the following:

> (a) Persons empowered to bring a civil action. A civil action may be brought—
>   (1) by a participant or beneficiary—
>     (A) for the relief provided for in subsection (c) of this section,[3] or
>     (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . .

Actions that could have been brought under § 1132, "where there is no other independent legal duty that is implicated by a defendant's actions," are completely preempted by § 1132. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). "[Section 1132] is relatively straightforward. If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits. A participant or beneficiary can also bring suit generically to 'enforce his rights' under the plan, or to clarify any of his rights to future benefits." *Id.* "Claims by anyone other than a 'participant or beneficiary,' however, fall outside the scope of ERISA's civil enforcement section." *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 946 (6th Cir. 1994); *see also Michigan Affiliated Healthcare Sys. v. CC Sys. Corp. of Michigan*, 139 F.3d 546, 550 (6th Cir. 1998). Thus, in order for § 1132 to be applicable to the instant case, a fiduciary relationship must have existed between the parties at the time the alleged misrepresentation was made.

In *Alexander*, we held that a prospective employee was not a "participant" in the plan merely because he might later become an employee (and thus a participant). We rejected the district court's conclusion that because Alexander was offered employment by the defendant, and therefore, was a "potential 'participant' in the plan," a § 1132 preemption defense was valid. *Id.* We explained that had the district court properly inquired into the nature of Alexander's relationship with the defendant, "it would have been clear that Alexander lacked standing to sue under ERISA (because he was never an employee) and that [defendant's] § 1132 ERISA preemption defense was misplaced (for the same reason)." *Id.* at 947. Here, it is clear from Thurman's complaint that at the time the alleged misrepresentation was made, Thurman was a potential employee. He was not yet a participant or beneficiary under the plan and, therefore, no fiduciary relationship existed. For this reason, we hold that Thurman could not have brought a claim for breach of fiduciary duty for the alleged misrepresentations, and, therefore, that his claims are not preempted by § 1132.

**ii.**

Even though Thurman's claims can survive § 1132, there remains the question of whether he can prevail in the face of 29 U.S.C. § 1144, ERISA's express preemption provision. Section 1144(a) preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. The Supreme Court has explained that Congress used language that was "deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). A state law may therefore be preempted "even if the law is not specifically designed to affect such plans, or the effect is only

---

[3]Subsection (c) explains that an administrator may be penalized for failing to provide certain requested information to a "participant or beneficiary." *See* 29 U.S.C. § 1132(c).

indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). Thus, the Supreme Court has held that even general state contract and tort laws may also be preempted by ERISA. *See Pilot Life*, 481 U.S. at 48. Nevertheless, the Court has made clear that some state laws might affect ERISA-governed plans in a way that is "too tenuous, remote, or peripheral" to say that they "relate to" the plan. *Shaw v. Delta Airlines*, 463 U.S. 85, 100 n.21 (1983) (citing *AT&T Co. v. Merry*, 592 F.2d 118, 121 (2d Cir. 1979) (holding that ERISA did not preempt a state's garnishment of a spouse's pension income to enforce alimony and support orders)); *see also New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654-68 (1995) (unanimously holding that a state law imposing surcharges on hospital rates for patients covered by ERISA plans did not "relate to" the plans, and were therefore not preempted).

In deciding whether a state-law claim is too remote to be preempted by ERISA, our precedents focus on whether the remedy sought by a plaintiff is primarily plan-related. *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 453 (6th Cir. 2003). Recently, however, we have identified three categories of claims that ERISA clearly preempts: state-law claims "that (1) 'mandate employee benefit structures or their administration;' (2) provide 'alternate enforcement mechanisms;' or (3) 'bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.'" *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005) ("*PONI*") (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996)). With respect to claims that do not fall within these three categories, we continue to follow our prior precedent that focuses on the nature of the remedy sought by a plaintiff.

In this case, only the second *PONI* category of state-law claims—those that provide alternative enforcement mechanisms—is applicable. Although that category appears to cast a wide net, the *PONI* Court was careful to limit its language, noting that "Congress did not intend . . . for ERISA 'to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries.'" *Id.* (quoting *LeBlanc v. Cahill*, 153 F.3d 134, 147 (4th Cir. 1998)). As we have noted, Thurman was not a participant in the plan when the misrepresentation was made. Therefore, Pfizer's recruiting manager was not subject to any ERISA duties with respect to Thurman when the promise was made. As far as we can tell, Thurman does not seek to enforce ERISA rights by an alternative mechanism.

Thus, we focus on the remedy Thurman requested. As *PONI* explained, "[i]n reviewing whether ERISA preempts a state-law negligent-misrepresentation claim, . . . ERISA preemption . . . turn[s] on . . . the true nature of the issues underlying the claim." *Id*. at 703. Further, the Court noted, "[w]here resolution of the misrepresentation claim necessarily requires evaluation of the plan and the parties' performance pursuant to it, the claim is preempted." *Id*.[4] In the alternative, where the resolution of a misrepresentation claim does not require interpreting the parties' responsibilities under the plan, or where the requested remedy refers to the plan only for the purpose of defining "specific, ascertainable damages," we have held that such claims are not preempted. *Marks*, 342 F.3d at 452.

Thurman and Pfizer each argue that they prevail under our rulings in *Marks* and *Briscoe v. Fine*, 444 F.3d 478 (6th Cir. 2006). In *Marks*, the plaintiff's complaint alleged that Newcourt, which had purchased all outstanding shares of his prior employer, had deceived him about his job responsibilities and duties, ultimately inducing him to accept employment and lull him into not

---

[4]As an example of a claim that would be preempted under this analysis, *PONI* cited to *Lion's Volunteer Blind Industries, Inc. v. Automated Group Administration, Inc.*, 195 F.3d 803 (6th Cir. 1999), where in order to get to the merits of the misrepresentation claim, the district court would have been required to calculate the plan benefits owed to the plaintiff under the ERISA plans. *Id.*

exercising his rights under an ERISA-governed severance plan. 342 F.3d at 452. We held that "Marks's fraud and misrepresentation claims are not entirely preempted, even though they clearly relate to ERISA insofar as they allege that Newcourt's conduct induced Marks 'not [to] exercise his rights under the AT&T Plan until May, 1999.'" *Id*. at 453. We instead focused on the remedy requested, finding that although any request for lost benefits under the plan might be preempted,

> [t]o the extent that Marks alleges that fraud or misrepresentation induced him to accept employment as an initial matter, he can state a state-law claim for fraud and/or innocent misrepresentation. Marks alleges that Newcourt's conduct induced him to become employed by Newcourt, to purchase 14,665 shares of Newcourt stock, and to borrow $ 453,258 to finance that purchase.

*Id*.

Likewise, here, Pfizer's alleged misrepresentations induced Thurman to accept employment and become a member of its pension plan. Just as in other cases, the crux of the matter is the nature of the remedies that Thurman requests. For this reason, to the extent that his claims are based on the expectation damages that Thurman requested in his complaint (i.e., the difference between the benefits promised and the benefits to which he was entitled), they are clearly preempted. However, Thurman's state-law claims for other benefits lost in reliance on the alleged misrepresentation—for example, decreased wages, moving expenses, and forfeited stock options—have such a "'tenuous, remote or peripheral' effect on the plan" that they are not preempted. *Id*. (quoting *Cromwell v. Equicor-Equitable HCA Corp*., 944 F.2d 1272, 1276 (6th Cir. 1991)); *see also Wright v. Gen. Motors Corp.*, 262 F.3d 610, 615 (6th Cir. 2001) (holding that plaintiff's claim was not preempted where her reference to a provision in her ERISA-governed benefit-plan summary was "simply a reference to specific, ascertainable damages she claims to have suffered as a proximate result of her discriminatory termination," and "not a lawsuit claiming wrongful withholding of ERISA covered plan benefits").

The result in *Briscoe* is more supportive of Pfizer's argument, but we find that it is sufficiently distinguishable from this case. There, plaintiffs brought state-law claims alleging that their employer's former officers and directors failed to disclose the troubled financial condition of the company and the condition of an ERISA-governed healthcare plan. 444 F.3d at 498. With respect to the latter allegation, we held it was preempted because "the plaintiffs have not pointed to 'any violation of a legal duty independent of ERISA.'" *Id*. at 499 (quoting *Davila*, 542 U.S. at 214). We further explained:

> Any duty to disclose the financial condition of the plan that the [defendants] might have owed to the plan beneficiaries arose not out of an independent source of law, but out of the existence and nature of the plan itself, including any duties that the plan imposed on the officers and directors. *See* [*Davila*, 524 U.S. at 214]. In other words, the plaintiffs' state-law claims against the [defendants] are simply a way of restating the claims for breach of fiduciary duty that they also allege under ERISA.

*Id*. *Briscoe* went to great lengths to stress that plaintiffs were clearly disguising what should have been properly brought as a claim for a breach of fiduciary duty under ERISA. *See id*. Further, the plaintiffs in *Briscoe* sued in order to recover benefits under the plan. *Id*. at 484; *see also id.* at 499 (interpreting *Marks* to mean that, "any contention that the employer had defrauded him of *plan benefits* would 'relate to' the plan and be subject to preemption" (emphasis added)). In contrast, Thurman was a non-participant, who was induced to enter into employment with Pfizer based on certain representations, and who now seeks something that is clearly outside the provisions of his benefit plan: what he gave up in reliance on Pfizer's alleged misrepresentations.

Our interpretation of *Marks* and *Briscoe* is supported by this Court's prior ERISA-preemption jurisprudence. For example, in *Perry v. P\*I\*E Nationwide, Inc.*, defendant-employer P\*I\*E, which was suffering economic woes, decided to design a stock-investment plan that would be "expressly subject" to ERISA in order to improve its financial state. 872 F.2d 157, 158 (6th Cir. 1989). In exchange for being allowed to participate in this plan, plaintiffs-employees took an irrevocable salary or wage deduction. *Id.* Ultimately, P\*I\*E was sold to another company, despite allegedly promising the employees that it would not be sold. *Id.* at 159. Plaintiffs sued based on a common law claim of fraudulent misrepresentation. *Id.* at 158. Although the Court found some of plaintiffs' claims preempted by ERISA, it held that because their request "not to be bound as participants and thus recoup their wage reductions" did not seek plan benefits, it was not preempted. *Id.* at 162. The *Perry* Court explained that, "[w]here the state law has only an indirect effect on the plan *and* where it is one of general application which pertains to an area of important state concern, the court should find there has been no preemption." *Id.* at 161 (quoting *Provience v. Valley Clerks Trust Fund*, F. Supp. 388, 391 (E.D. Cal. 1981)).[5]

A case from a sister circuit also provides some guidance. In *Smith v. Texas Children's Hospital*, an employee brought state-law claims of fraudulent inducement and breach of contract against her new employer after she was told she did not qualify for benefits that her new employer had allegedly promised her. 84 F.3d 152, 153-54 (5th Cir. 1996). After conducting an analysis relevant to the issue in dispute, the Court, in dicta, provided a hypothetical example that is quite similar to Thurman's case. The Court set up an example in which the plaintiff left her former job in reliance upon her new employer's promise that she would qualify for benefits under an ERISA plan valued at $12,000, and as a result, forfeited a $10,000 annual bonus from her old job. *Id.* at 157. The Court explained that although her claim for the $12,000 would be preempted by ERISA, she might still have a non-preempted claim for the relinquished $10,000 bonus. *Id.* Similarly, here, Thurman left his former job based on the promise that he would qualify for certain benefits under Pfizer's pension plan. Although he cannot now recover any plan benefits, he might be able to recover that which he relinquished when he left his former employer.

## B.

Finally, Thurman also requests rescission from the plan. Like his request for reliance damages, and unlike his now-abandoned request for expectation damages, awarding Thurman this relief does not in any way depend on an interpretation of the plan. *See Lion's*, 195 F.3d at 809 (explaining that the plaintiff's prayer for relief, which would require calculation of benefits that would have been owed, "is clearly unlike *Perry*, in which the plaintiffs sought an equitable remedy (recission) and a clearly defined monetary amount (lost wages) that in no way depended on an ERISA plan for determination"). Therefore, Thurman's request for rescission through his state-law claims is not preempted.

## C.

We stress that our holding is a narrow one, constrained to the particular scenario presented in the case at bar. What we have here is simply a case of a person who left his old employer based

---

[5]Parties litigating cases subsequent to *Perry* have cited it for the proposition that there was no preemption because the claimed misrepresentation occurred prior to the plan coming into existence. However, this Court has explained that this is an inaccurate explanation of *Perry*'s holding; *Perry* is about the remedy requested, not the timeline of events. *See Lion's*, 195 F.3d at 808 & n.3 (explaining that in *Perry*, the point in time at which the plan came into existence was irrelevant; rather, *Perry* focused on ERISA's ability to provide the remedy sought by plaintiffs); *see also Mass. Cas. Ins. Co. v. Reynolds*, 113 F.3d 1450, 1454 (6th Cir. 1997) (explaining *Perry* as holding that preemption did not apply because the state-law claims were not for plan benefits or an increase in plan benefits, but "impl[ying], however, that a plaintiff's state law claims for benefits under an ERISA plan are preempted by ERISA even though based on wrongful conduct occurring prior to the existence of the ERISA plan").

on promises made by his new employer. These promises could have concerned anything — for example, an increase in wages, more vacation days, or free parking. Here, these promises just so happened to concern retirement benefits. We see no reason to bind employers to some promises used to induce acceptance of an employment offer, but give them a 'get out of jail free card' when their promises concern the scope of a plan governed by ERISA. Notably, allowing Thurman to proceed on his state-law claims does not threaten any of ERISA's objectives. We are not creating an additional enforcement mechanism under which individuals in Thurman's situation may collect ERISA plan benefits. *See LeBlanc*, 153 F.3d at 147-48. Rather, they may bring state-law claims for losses that are so far attenuated from an ERISA plan that preemption is simply unwarranted. As explained above, those who are already participants or beneficiaries under an ERISA plan when a misrepresentation is made must still bring a claim for breach of fiduciary duty under § 1132. Further, our ruling in no way alters the methods by which plans are administered, or how the actions of plan administrators are regulated. *Id*. Nor does our ruling create conflicts between state law and federal law. *Id*. We simply hold that employers who misrepresent certain benefits provided by ERISA-governed plans to prospective employees cannot later use preemption as an end-run around liability for fraudulent or innocent misrepresentations. If adhering to promises regarding ERISA-governed plans proves too cumbersome for employers, then during the recruitment process, those employers must simply be more careful before informing potential employees of the ERISA-governed benefits to which they might be entitled. This is a duty created by state law, with which we see little basis for federal law to interfere.

## IV.

For the reasons above, we **REVERSE** the district court's dismissal of Thurman's state-law claims to the extent that they are not related to the plan, and **REMAND** for further proceedings regarding Thurman's state-law claims of fraudulent and innocent misrepresentation.[6]

---

[6] It is unclear whether the relief requested by Thurman exceeds the $75,000 amount-in-controversy requirement necessary for diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). Upon remand, even if the district court finds that the amount-in-controversy requirement is not met, it may, in its discretion, exercise supplemental jurisdiction over this case pursuant to 28 U.S.C. § 1367 because some claims in this case presented federal questions under 28 U.S.C. § 1331. Those claims were Thurman's partially preempted claims that were brought before the district court but which are not the subject of this appeal.