RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0247p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

SILVIA J. THOMAS,

     *Plaintiff-Appellant,*

     *v.*

CHANCEY MILLER and ELMWOOD CEMETERY,

     *Defendants-Appellees.*

No. 05-2404

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-70473—Julian A. Cook, Jr., District Judge.

Submitted: January 24, 2007

Decided and Filed: June 27, 2007

Before: BOGGS, Chief Judge; and MERRITT and MOORE, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Benjamin Whitfield, Jr., BENJAMIN WHITFIELD, JR. & ASSOCIATES, Detroit, Michigan, for Appellant. James F. Hermon, DYKEMA GOSSETT, Detroit, Michigan, for Appellees.

───────────────

## OPINION

───────────────

BOGGS, Chief Judge. Silvia Thomas sued Elmwood Cemetery and Chancey Miller, her former employer and supervisor, respectively, for health benefits under the Consolidated Omnibus Reconciliation Act ("COBRA"). Both parties agreed that Elmwood falls below the statute's application threshold of twenty or more employees, which is codified at 29 U.S.C. § 1161(b). Thomas argued, however, that the doctrine of equitable estoppel should bar the defendants from claiming that they fall below the statutory threshold. The district court granted summary judgment to Elmwood and Miller, holding as a matter of law that estoppel could not be applied to excuse the failure to meet the numerical threshold.

This case presents two questions in the context of an action under COBRA. First, can the doctrine of equitable estoppel bar an employer, who employs fewer than the statute's threshold of

1

twenty employees, from defending an action on that basis?  Second, if equitable estoppel can so apply, can Thomas satisfy the doctrine's requirements in this case?

As we explain more fully below, the Supreme Court's decision last term in *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006), which held that such an application threshold is an element of a claim rather than a jurisdictional bar, renders this an open question in our circuit.  There is no principled reason we can see, in *Arbaugh*'s wake, to set such a threshold apart from other elements of claims, which parties generally may concede, be ordered by a court to admit (as in a discovery sanction), or be equitably estopped from contesting.  Thus, we hold that equitable estoppel may, in appropriate cases, bar an employer from arguing that it does not satisfy a statute's numerical application threshold.  Nevertheless, Thomas cannot satisfy the estoppel doctrine's requirements in this case.  Her claim cannot withstand summary judgment.  We affirm the judgment of the district court.[1]

I

Thomas was employed by Elmwood Cemetery from 1993 through January 16, 2004.  The parties agree that Elmwood consistently employed fewer than twenty people during that period.  Thomas had health insurance coverage provided by Elmwood while she was employed there, although she was not formally notified of that coverage's termination until two months after Elmwood fired her.  That notification took place during a phone call in the first week of March 2004.  During that call, her provider informed her that "Elmwood Cemetery had notified them, in a letter signed by Mr. Miller, to cancel [her] health insurance coverage, retroactive to January 16, 2004, the date of [her] termination."

During Thomas's employment, Elmwood offered COBRA benefits to another employee, John Winn.[2]  Thomas became aware of Elmwood's provision of those benefits to Winn from "conversations overheard within the very small office in which [she] formerly worked."  Those conversations involved Winn's failure to pay his COBRA premiums on time, which resulted in "trouble" between Miller and Elmwood's board of directors.

Since her termination, Thomas has suffered a series of strokes, which she believes were caused by her inability to obtain medical care after her termination.  Thomas also developed serious cardiac and respiratory problems.  Due to those maladies, Thomas incurred substantial medical expenses, portions of which remain outstanding or were paid using borrowed funds.

Thomas filed suit in February 2005 against Elmwood and Miller.  She alleged that they had a duty under 29 U.S.C. § 1162(a)(2), a provision of COBRA, to notify her "of her right to continue in force without interruption the health insurance that she had been provided as a perquisite of her employment."  Thomas alleged that the defendants failed to meet that duty.  As a consequence, she

---

[1]For the purposes of all questions, the analysis for Elmwood and Miller is identical.  The law is settled in this circuit that, in cases where a COBRA claimant seeks relief for her employer's failure to provide her with statutorily-required notice, personal liability does not attach to a representative of her former employer unless that representative is the administrator of the ERISA/COBRA plan.  *McDowell v. Krawchison*, 125 F.3d 954, 962 (6th Cir. 1997).  Here, it is likely that Miller was the administrator of whatever plan was at issue, because he seems to have been responsible for awarding COBRA benefits to the one employee who received them.  Thomas alleged in her complaint that Miller was the ERISA plan administrator, and Elmwood never disputed that assertion.  Nevertheless, because both defendants' liability depends on whether Elmwood is covered by COBRA at all, the arguments that warrant affirming the judgment of the district court warrant doing so as to both defendants equally.

[2]For covered employers, COBRA requires continuation health coverage to covered employees for eighteen months after a qualifying event (including termination) and notice to employees of their rights thereto.  *McDowell*, 125 F.3d at 957-58.

requested relief in the form of continued health coverage during the litigation, notification of her rights under COBRA, $100 per day as a penalty for failure to comply with the statute, and other appropriate remedies. She also sought attorney's fees and costs.

The defendants moved for summary judgment without filing an answer. They argued that COBRA did not apply to Elmwood because, at all times relevant to the litigation, Elmwood employed fewer than twenty people.[3] COBRA applies only to employers with twenty or more employees. *See* 29 U.S.C. § 1161(b) ("Subsection (a) shall not apply to any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than [twenty] employees on a typical business day during the preceding calendar year.").

Thomas conceded that Elmwood did not employ twenty or more people. Nevertheless, she claimed that the defendants offered continuing COBRA benefits to a white male employee and denied those benefits to her, a black female. She further claimed that Elmwood knowingly engaged in racist and sexist practices. She thus argued:

> Plaintiff is entitled to the application of an equitable estoppel as to Defendants who, by their wholly voluntary conduct in (a) providing as [sic] BC/BS health insurance, a perquisite to all of its employees, which included COBRA coverage upon separation and (b) actually providing COBRA coverage to one John Winn, (apparently because he was a white male) after he left Elmwood, created a condition suitable for the application of the doctrine to bar them from raising § 1162(b) as a defense.

> Defendants should be equitably estopped from asserting any rights or defenses which might otherwise be available to them under the so-called small business exemption set forth at 29 USC § 1161(b) against Plaintiff herein, who, in good faith relied upon the promises or offers of COBRA set forth in the manual,[4] and further relied upon COBRA being available to her, should she ever leave Elmwood's employ, because she knew that Winn got COBRA when he left.

The district court sought authority from Thomas supporting her contention that equitable estoppel should apply in this case, but she provided little other than generic cases discussing the doctrine itself. At the time, our precedent precluded the use of estoppel in the fashion sought by Thomas because we had deemed statutory thresholds, such as COBRA's, to be issues of subject matter jurisdiction. *See, e.g.*, *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 607 (6th Cir. 1998). Thus, the district court granted the defendants' motion for summary judgment because

---

[3]The defendants also argued that the numerical threshold in the statute was jurisdictional, rather than an element of a plaintiff's claim for relief. Circuit precedent would have supported that claim at the time. *See Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 607 (6th Cir. 1998) (holding that the court lacked subject matter jurisdiction because estoppel could not extend the reach of Family and Medical Leave Act beyond employers with at least fifty employees). However, the Supreme Court recently made clear that such numerical thresholds in federal statutes, absent clear direction from Congress, are elements of claims for relief, rather than limits controlling the subject matter jurisdiction of the federal courts. *See Arbaugh*, 546 U.S. at 515-16.

[4]The manual's provision, which is included in the joint appendix and is cited by both parties in their briefs, reads: "When you are no longer eligible for health care coverage through your employer, coverage for you and your dependents ends. However, if your group has 20 or more employees there are two options available to you. If your group has fewer than 20 employees, then only Group Conversion is available to you."

Thomas had not shown that COBRA applied to Elmwood.[5] Thomas timely appealed and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

We review a district court's grant of summary judgment *de novo*. *Trustees of the Mich. Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 590 (6th Cir. 2000). The decision below may be affirmed only if the pleadings, affidavits, and other submissions show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We must draw all reasonable inferences in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## III

The first question for our decision is whether the doctrine of equitable estoppel can, in appropriate cases, bar an employer, concededly not meeting COBRA's numerical application threshold, from defending an action under that statute on that basis. We hold, in the wake of the Supreme Court's decision in *Arbaugh*, 546 U.S. at 515-16, that it can.

COBRA is an amendment to the Employment Retirement Income Security Act ("ERISA"). *See McDowell*, 125 F.3d at 961. We already have held that the doctrine of equitable estoppel can apply in ERISA cases when welfare benefits plans, rather than pension plans, are at issue. See *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298-1300 (6th Cir. 1991). In *Armistead*, we wrote that ERISA authorizes the courts "to fashion a body of federal common law to enforce the agreement[s] that these statutes bring within their jurisdiction." *Ibid.* That body of federal common law includes equitable estoppel. *Ibid.*

Despite our application of estoppel in ERISA and other cases, we previously have refused to apply the doctrine when the issue was whether that party satisfied a statute's numerical threshold. *See, e.g.*, *Douglas*, 150 F.3d at 607. Our precedent makes clear, however, that the basis for our earlier decisions was a view that numerical-threshold requirements were jurisdictional matters rather than elements of claims. *Id.* at 607-08 (citing *Armbruster v. Quinn*, 711 F.2d 1332, 1335 (6th Cir. 1981) ("The essential question in this case is whether the plaintiffs' [sic] are barred from bringing their claim in federal court by the Title VII jurisdictional requirement of fifteen employees.")). *See also Mickler v. Nimishillen & Tuscarawas Ry. Co.*, 13 F.3d 184, 189 (6th Cir. 1993) ("This Court has no jurisdiction over plaintiff's estoppel claim. . . . Federal jurisdiction simply cannot be conferred by estoppel."). Thus, when we addressed this question in *Douglas*, our decision was dictated by the maxim that parties can neither consent to federal jurisdiction nor waive a court's lack of jurisdiction. *Douglas*, 150 F.3d at 608-09 ("Parties cannot create subject matter jurisdiction by contract where none exists, nor can they waive a court's lack of subject matter jurisdiction because,

---

[5] At the time the district court rendered its decision, it should have dismissed the case for want of subject matter jurisdiction because it was clear that our precedent required that result. Under our earlier cases, the federal courts did not have subject matter jurisdiction to hear a claim against an employer under a particular statute if the employer fell below that statute's numerical threshold. It is not clear that the district court reached the result that was appropriate at the time it issued its decision. However, because it is clear from the record that Thomas cannot prevail on her estoppel claim, we affirm the district court's grant of summary judgment on other grounds. *Cf. Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985) (citing *J. E. Riley Inv. Co. v. Comm'r*, 311 U.S. 55, 59 (1940)).

quite simply, subject matter jurisdiction cannot be created where none exists.") (citing *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1228 (9th Cir. 1989)).

The Supreme Court effectively overruled *Douglas*'s jurisdictional holding in *Arbaugh*, 546 U.S. at 515-16. In *Cobb v. Contract Transportation, Inc.*, we recently wrote that "several recent Supreme Court cases have overruled the holding in *Douglas*. Most directly on point is *Arbaugh*, in which the Supreme Court held that Title VII's employee-numerosity requirement is not jurisdictional in nature." 452 F.3d 543, 549-50 (6th Cir. 2006) (citing *Arbaugh*, 546 U.S. at 509-15; *Eberhart v. United States*, 546 U.S. 12 (2005); and *Kontrick v. Ryan*, 540 U.S. 443, 453-54 (2004)).[6] We continued, noting that *Arbaugh* expressly overruled *Armbruster*, the Title VII decision on which *Douglas* based its holding. *Ibid. Douglas*'s jurisdictional holding no longer binds this court.

The question, then, is whether anything remains of *Douglas* that would bar the application of estoppel here. Equitable estoppel often operates to prevent a party from contesting an issue of fact or advancing a particular claim or defense. *Armistead*, 944 F.2d at 1298; *Apponi v. Sunshine Biscuits, Inc.*, 652 F.2d 643, 649 (6th Cir. 1981). Because we previously dealt with such cases on jurisdictional grounds, precedent in our own circuit is sparse on the question of whether, absent a jurisdictional bar, estoppel can apply in these circumstances.

At bottom, though, the issue here is the power of a court to compel a party either to admit, or not to deny, the existence of a particular fact relevant to a claim for relief. Here, the factual issue is whether an employer has a certain number of employees. On non-jurisdictional issues, the power of the federal courts to take such action is well established. For example, federal courts may order as discovery sanctions that certain facts be taken as established or that a party be precluded from supporting or opposing claims or defenses. A court may even enter default judgment or dismissal against a party in that context. *See* Fed. R. Civ. P. 37(b)(2)(A-C). *See also Taylor v. Medtronics, Inc.*, 861 F.2d 980, 985 (6th Cir. 1988); *Smith v. Chicago Sch. Reform Bd. of Trs.*, 165 F.3d 1142, 1145 (7th Cir. 1999); *In re Attorney Gen. of United States*, 596 F.2d 58, 65 (2d Cir. 1979).

The power to enter default judgment is critical to this inquiry because it conclusively establishes every factual predicate of a claim for relief. *Harmon v. CSX Transp.*, 110 F.3d 364, 368 (6th Cir. 1997); *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 693 (1st Cir. 1993) ("Defendant's argument ignores the maxim that an entry of a default against a defendant establishes the defendant's liability.") (citing *Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5 (1st Cir. 1985) ("There is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of its [] claims must be considered established as a matter of law.")).

In other words, federal courts already possess the power, in certain contexts, to establish conclusively each element of a claim. After the Supreme Court's holding in *Arbaugh*, we must view

---

[6]The Supreme Court's recent decision in *Bowles v. Russell*, No. 06-5306, 2007 U.S. LEXIS 7721 (U.S. June 14, 2007) does not undermine the vitality of *Arbaugh* or the other cited cases. *Arbaugh* was decided unanimously by eight justices and acknowledges that, when Congress creates a federal cause of action, it does not make any element of a claim jurisdictional without saying so. 546 U.S. at 515 (" If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue."). *Bowles*, in contrast, rests on a long-held interpretation of the congressional enactments that confer jurisdiction upon the courts of appeals. 2007 U.S. LEXIS 7721 at *8 ("This Court has long held that the taking of an appeal within the prescribed time is 'mandatory and jurisdictional.'"); *id*. at *15 (citing 28 U.S.C. § 2107(c)). *See also id*. at *13 (noting that Court has repeatedly held that the timely-filing requirements for writs of certiorari in civil cases are jurisdictional). Indeed, as we noted when *Bowles* was before this court, Congress had limited by statute our jurisdiction to consider Bowles's appeal. *Bowles v. Russell*, 432 F.3d 668, 672 (6th Cir. 2004) (citing 28 U.S.C. § 2107). There is no contradiction between *Bowles* and *Arbaugh*. In the former, Congress limited jurisdiction by statute; in the latter, it did not.

statutes' numerical thresholds in that light; they are merely elements of claims. 546 U.S. at 516. Many other federal statutes have similar thresholds. *See* 42 U.S.C. § 2000e(b) (Title VII); 29 U.S.C. § 2611(2)(B)(ii) (Family and Medical Leave Act); 29 U.S.C. § 2101(a)(1) (Worker Adjustment and Retraining Notification Act). We cannot accept the general proposition that courts could enter default judgments and compel factual admissions on all elements of claims *except* an employer's number of employees. Doing so would separate one element of a claim from another without any statutory or logical reason. *Cf. Arbaugh*, 546 U.S. at 515-16.

Equitable estoppel is not materially different, in this context, from discovery sanctions or the entry of a default judgment. Discovery sanctions often require the showing of bad faith by the disobedient party. *See, e.g., Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154-55 (6th Cir. 1988). "Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Community Health Servs.*, 467 U.S. 51, 59 (1984). Like discovery sanctions, the doctrine often operates to prevent a party who engaged in bad faith conduct from making certain arguments or claims in court. *Armistead*, 944 F.2d at 1298 (affirming district court's estoppel of defendant from arguing that plaintiffs could not collect ERISA retirement benefits because defendant had made representations promising them such benefits).

Certainly, "bad faith" conduct under the discovery rules necessarily can occur only during the litigation itself, whereas a court considering the estoppel issue could consider conduct that occurred prior to parties' resort to the courts. However, it seems to us that such a distinction is of no moment where the question is whether a federal court possesses a particular power. Estoppel, like all equitable doctrines, is a flexible doctrine that seeks to balance the equities in particular cases. *Valentine-Johnson v. Roche*, 386 F.3d 800, 812 (6th Cir. 2004) (citing *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30-31 (1st Cir. 2004)). *Cf. Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994) (en banc) (noting that the standard for modifying equitable decrees is "flexible" and "has an ancient lineage in our common law."). Given the flexible nature of the doctrine, and that we already have held that it applies in ERISA welfare-benefit cases, *see Armistead*, 944 F.2d at 1298, we break little new ground by holding that it applies to a particular element of a COBRA claim.

We also acknowledge that our holding might seem at first blush to run counter to COBRA's text, which says clearly that the statute does not apply to employers with fewer than twenty employees. 29 U.S.C. § 1161(b). Under that reasoning, a court could never compel a defendant to concede an element or admit a fact that a legislature determined was a prerequisite to liability. Thus, a party in a negligence case could not acknowledge that he breached his duty of care; a party in a fraud case could not acknowledge intentional deceit. We cannot accept that logic. Courts long have exercised the power to compel admission on elements of claims. Under the reasoning of *Arbaugh*, 546 U.S. at 509-16, COBRA's number-of-employees requirement is no different. We can see no meaningful distinction between numerical requirements and other elements of claims, such that we could ignore well established equitable principles and procedural rules.

There is an argument that refusing to apply estoppel in these particular cases would better respect the separation between federal and state causes of action that Congress has established. *Cf. Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). There are established bodies of law in nearly every state that could cover a situation, like that at issue here, in which an individual allegedly makes a misrepresentation and another supposedly relies to her detriment.[7]

---

[7] For example, Michigan law authorizes actions for breach of contract, promissory estoppel, and fraudulent misrepresentation. *See, e.g., Rowe v. Montgomery Ward & Co.*, 473 N.W.2d 268 (Mich. 1991) (common law contract claim); *State Bank of Standish v. Curry*, 500 N.W.2d 104, 107 (Mich. 1993) (promissory estoppel); *Hord v. Environmental Research Inst.*, 617 N.W.2d 543, 546 (Mich. 2000) (fraudulent misrepresentation).

Why should we permit estoppel to operate in a COBRA case, when the underlying conduct otherwise might be covered by a state-law cause of action? We believe that in the limited context of colorable estoppel claims based on misrepresentations about COBRA or ERISA benefits, there is a not-insignificant danger that state law actions will be preempted. *See, e.g.*, *Ramsey v. Formica Corp.*, 398 F.3d 421, 424 (6th Cir. 2005). ERISA contains an expansive preemption provision, which mandates that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. *See* 29 U.S.C. § 1144(a); *Ramsey*, 398 F.3d at 424. We previously have held that, in certain situations, § 1144(a) may preempt state-law estoppel claims. *Briscoe v. Fine*, 444 F.3d 478, 498-99 (6th Cir. 2006); *Lion's Volunteer Blind Industries, Inc. v. Automated Group Administration, Inc*., 195 F.3d 803 (6th Cir. 1999); *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 696 (6th Cir. 1989).

Thus, were we to cut off the limited avenue of equitable estoppel, many claims premised on misrepresentation might be simultaneously preempted by ERISA and foreclosed by COBRA's twenty-employee requirement. A recent decision of this court illustrates just how finely the ERISA preemption line must be drawn in cases where misrepresentations by employers and the ERISA framework intersect. *See Thurman v. Pfizer*, 484 F.3d 855 (6th Cir. 2007). In that case, we drew a distinction between expectation and reliance damages in a claim based on a prospective employer's false promise of retirement benefits, which lured the plaintiff away from his former job. *Id*. at 862. We reasoned that only the former was preempted because it would have required a calculation of benefits under the prospective plan. *Id*. at 862-64. The latter would have required a calculation only of what the injured party relinquished – the stock options, wages, and other perquisites he gave up in order to enter the defendant's employ. Because those claims did not relate to the ERISA plan, we held that they survived ERISA's preemption provision. *Ibid*.

*Thurman* makes clear that, in any given case, there is a chance that a state-law tort claim based on a misrepresentation in some way connected to an ERISA plan might survive preemption. *Ibid*. *See also Marks v. Newcourt Credit Group, Inc*., 342 F.3d 444, 453 (6th Cir. 2003). It also makes clear, however, that it is the rare Magellan who could navigate those straits. Forcing parties who can establish estoppel's traditional elements to choose between potentially preempted state-law claims and claims ostensibly foreclosed by COBRA's numerical threshold would impose too great a burden for little practical gain, particularly when we already have held that equitable estoppel may apply in ERISA welfare-benefit cases. *Armistead*, 944 F.2d at 1298-1300. Absent a compelling reason to foreclose completely the narrow avenue of equitable estoppel, we decline to do so. We thus express agreement with the circuits that, prior to *Arbaugh*, had held statutory numerical thresholds, such as that at issue here, to be non-jurisdictional elements of claims. *See, e.g.*, *Kosakow v. New Rochelle Radiology Assocs., P.C*., 274 F.3d 706, 725 (2d Cir. 2001); *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000).

Coincidentally, those circuits also developed positions on the question of whether equitable estoppel could apply on such an issue. They held that it could. *Kosakow*, 274 F.3d at 725; *Dormeyer*, 223 F.3d at 582. More recently, the Fifth Circuit, post-*Arbaugh*, held that, as with any other element of a claim, a party may be estopped from arguing that it employs fewer than the number required by a particular federal statute for coverage. *See Minard v. ITC Deltacom Communs., Inc*., 447 F.3d 352, 359 (5th Cir. 2006) ("Accordingly, an employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an 'eligible employee' and entitled to leave under [the Family and Medical Leave Act], and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment.").

Prior to the Supreme Court's decision in *Arbaugh*, the Fifth Circuit's jurisprudence had mirrored ours on the jurisdictional question. *See Arbaugh v. Y&H Corp*., 380 F.3d 219, 224 (5th Cir. 2004), *rev'd*, 546 U.S. at 509-16. After the Supreme Court resolved a conflict among the

circuits against the Fifth Circuit's and our jurisdictional stance, the Fifth Circuit permitted estoppel to operate on the numerical-threshold question. *See Minard*, 447 F.3d at 359. We now follow the Fifth Circuit's lead. Accordingly, we hold that, in appropriate cases, courts may exercise their equitable powers to estop defendants from arguing that they fall below a statute's numerical threshold.

IV

We now turn to the question of whether Thomas can satisfy the requirements of estoppel, such that she could prevent Elmwood and Miller from defending against her claim on the ground that Elmwood has, at every time relevant to this case, employed fewer than the twenty people required by COBRA for coverage. 29 U.S.C. § 1161(b).

In order for a party to employ equitable estoppel against another party, the following elements must be satisfied. First, the party to be estopped must have used "conduct or language amounting to a representation of material fact." Second, that party must have been aware of the true facts. Third, that party must have had an intention that the representation be acted on, or have conducted himself in such a way toward the party asserting estoppel that the latter had a right to believe that the former's conduct was so intended. Fourth, the party asserting estoppel must have been unaware of the true facts. Finally, the party asserting estoppel must have detrimentally and justifiably relied on the representation. *Armistead*, 944 F.2d at 1298. "All of these elements must be present before the court may order estoppel." *Gibbons*, 209 F.3d at 591. Because Thomas can satisfy neither the first nor the third element, she cannot prevail on her estoppel claim and we decline to address the doctrine's other elements.

With respect to the first element, Thomas can prevail only if she argues that Elmwood or Miller represented to her that she would retain COBRA benefits. In her brief on appeal, Thomas contends that conversations she *overheard* in the work area relating to her employer's provision of COBRA to John Winn, another employee, "amounted to a misrepresentation of material fact, i.e., former employees would be afforded an opportunity through COBRA to retain their health insurance coverage." In her affidavit opposing summary judgment, Thomas claims to have been present in the work area when "Mr. Miller discussed or commented upon Winn's receipt of COBRA." *Br. of Appellant*, at 11 (citing JA 46) ("From conversations overheard within the very small office in which I formerly worked, I became aware that Winn had COBRA because [Winn's] apparent failure to pay his premiums on time got Chancey [Miller] in trouble with the Board.").

In other words, she claims only that others near her in the office talked among themselves about Winn's receipt of benefits, and that she then inferred from hearing those conversations that she too would receive COBRA benefits. Nothing in the record indicates, however, that Miller's discussion of *Winn's* COBRA benefits amounted to a representation to *Thomas* that *she* would receive COBRA benefits. *Cf. Smith v. Ameritech*, 129 F.3d 857, 867-68 (6th Cir. 1997) ("We find, therefore, that defendants' provision of a certain accommodation to one disabled employee does not automatically entitle plaintiff to the same accommodation."). Without more, inferences drawn by a party from overheard conversations about another employee do not amount to representations *to* or *about* the overhearing party. We therefore hold that Thomas cannot satisfy the first estoppel element.

Thomas also cannot satisfy estoppel's third element. Because Thomas only *overheard* conversations among others about another employee, she has presented no evidence that Miller or Elmwood *intended* her to rely, in conducting her own affairs, on those conversations or on

Elmwood's provision of COBRA to Winn.[8]  Accordingly, although equitable estoppel can preclude an employer from arguing that it falls beneath the statutory threshold, Thomas does not qualify for such relief because she can not establish the first or third estoppel elements.

V

The district court granted summary judgment to the defendants in this matter because Elmwood falls below COBRA's numerical threshold for coverage.  The district court also held, as a matter of law, that equitable estoppel could not preclude Elmwood or Miller from defending against her COBRA claim on that ground.  At the time the district court issued its decision in this case, our precedent categorically required the rejection of Thomas's claims on jurisdictional grounds.  *See Douglas*, 150 F.3d at 607.  We thus cannot fault the district court for refusing to apply estoppel principles in Thomas's case.  Nevertheless, based on a change in Supreme Court precedent, we hold that equitable estoppel may apply on the issue of whether an employer meets a statute's numerical threshold.  *See Minard*, 447 F.3d at 359.  *Cf. Arbaugh*, 546 U.S. at 516 (holding that such an issue is merely an element of a claim).  However, because Thomas cannot satisfy estoppel's requirements, we AFFIRM the judgment of the district court.

---

[8]For similar reasons, Thomas's claim that "Elmwood deliberately chose, or elected, to waive the protection of § 1161(b) by voluntarily affording COBRA to Winn for the next 18 months," *Reply Br. of Appellant*, at 17, lacks merit. To be sure, Thomas is correct that "a waiver occurs when a party intentionally relinquishes or abandons a known right." *See Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 905 (6th Cir. 2006) ("Waiver is the intentional relinquishment or abandonment of a known right.") (citing *United States v. Osborne*, 402 F.3d 626, 630 (6th Cir. 2005)).  However, there is no indication on this record that Elmwood abandoned or intended to abandon its rights under COBRA's twenty-or-more provision.  Elmwood might have inadvertently provided COBRA to one employee, in which case its abandonment would not have been intentional.  Elmwood might also have *intentionally* provided COBRA to *one* employee for reasons peculiar to that case, in which case it would not intentionally have abandoned its rights under § 1161(b) with respect to all other employees.  *Cf. Ameritech*, 129 F.3d at 867-68.  In any case, we cannot accept the notion that, on these facts, Elmwood can be shown intentionally to have abandoned its right not to provide COBRA to Thomas.