Norvelle Samuel LEE, Plaintiff,

v.

**SHEET METAL WORKERS' NATIONAL PENSION FUND, Defendant.**

Case No. 09–12226.

United States District Court, E.D. Michigan, Southern Division.

March 15, 2010.

Robert L. Hindelang, Grosse Pointe Farms, MI, for Plaintiff.

Brian J. Petruska, Slevin & Hart, Washington, DC, George H. Kruszewski, Sachs Waldman, Detroit, MI, for Defendant.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

DAVID M. LAWSON, District Judge.

Plaintiff Norvelle Lee filed a complaint alleging that the defendant wrongfully denied his application for early retirement pension benefits on the ground that his employment with another employer in the sheet metal industry renders him ineligible at the present time. He filed a seven-count complaint that included a traditional challenge to the fund administrator's decision under the Employee Retirement Income Security Act of 1974 (ERISA) (Count I), plus claims for breach of contract (Count II); "reasonable expectation of pension benefits" (Count III); equitable estoppel (Count IV); violation of due process (Count V); fraud (Count VI); and violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (Count VII). The defendant filed a motion to dismiss contending inadequate service of process, the state law claims are preempted by ERISA, the due process claim fails for lack of state action, and the RICO claim has not been pleaded with particularity. The Court heard oral argument on March 11, 2010, during which the defendant withdrew the argument that service of process was insufficient. The Court now finds that the defendant's remaining arguments have merit and will dismiss all but Count I of the complaint.

### I.

According to the complaint, Norvelle Samuel Lee worked for sheet metal industry for more than twenty-four years and was a member of two different Sheet Metal Industry local unions, one in Kentucky and one in Troy, Michigan. He withdrew from these unions in March 2000 because, according to him, he could not find any work in the sheet metal industry. Instead, the plaintiff accepted a job with Chrysler Corporation, first as a tinsmith and then as a maintenance welder, where he stayed until May 2009, when he took a buy-out package.

Although by the time of his withdrawal from the unions, the plaintiff's pension benefits had fully vested, defendant Sheet Metal National Workers' Pension Fund, which is the pension fund administrator for the local unions in question, denied the plaintiff's application for early retirement pension benefits. The defendant took the position that Lee's employment with Chrysler disqualified him from early retirement benefits because the work done by Chrysler qualifies as work in the sheet metal industry and Chrysler has not entered into a CBA with the unions. The fund relied on language in the plan that postpones the participant's right to early retirement benefits by six months for "every calendar quarter in which a Participant or Employee, or a former Participant or Employee performs at least one hour of employment on or after September 1, 1988, in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer." Ex. B to Pl.'s Compl. The fund explained that based on his years of service, the plaintiff will be entitled to normal retirement pension at age 65.

After exhausting available appeals, the plaintiff commenced the present action against Sheet Metal Workers' National Pension Fund on June 9, 2009. His complaint contains the seven counts noted above. The defendant filed its motion to dismiss on July 23, 2009 relying on Federal Rule of Civil Procedure 12(b)(5) and (6). As mentioned, the argument under Rule 12(b)(5) has been withdrawn; the defen-

dant acknowledged that service of process was sufficient. The defendant still asserts the other grounds.

## II.

Motions to dismiss governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure challenge whether a complaint "state[s] a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993). When deciding a motion under that Rule, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir.1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Ibid.* Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2); *see also Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson,* 551 U.S. at 93, 127 S.Ct. 2197 (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). Nevertheless, to survive a motion to dismiss, a complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct.

1937, 1949, 173 L.Ed.2d 868 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ibid.* (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). Although this pleading standard "does not require 'detailed factual allegations,' ... [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955); *see also Hensley Mfg., Inc. v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir.2009). If the court determines that certain counts of the plaintiff's complaint are preempted by ERISA, it can dismiss such counts under Rule 12(b)(6). *See Marks v. Newcourt Credit Group, Inc.,* 342 F.3d 444, 453 (6th Cir.2003).

### A.

The defendant contends that Counts II (breach of contract), III ("reasonable expectation of pension benefits"), IV (equitable estoppel) and VI (fraud) are based on state law and are preempted by ERISA. The plaintiff argues that the claims are allowed under "federal common law," which is available to fill the gaps where "ERISA is silent or ambiguous." *Weiner v. Klais & Co.,* 108 F.3d 86, 92 (6th Cir. 1997).

ERISA governs employee benefit and pension plans. 29 U.S.C. § 1003(a). To ensure uniform interpretation of covered plans, Congress drafted ERISA with an "expansive" preemption provision. *Thomas v. Miller,* 489 F.3d 293, 300 (6th Cir.2007). Section 514 of the Act states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. 29 U.S.C. § 1144(a). A state law therefore may be

preempted "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). "[T]he Supreme Court has held that even general state contract and tort laws may also be preempted by ERISA." *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 861 (6th Cir.2007) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). State law claims that are "too tenuous, remote, or peripheral," and therefore do not "relate to" a pension or benefit plan, may survive the sweeping ERISA preemption provision. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

To distinguish those state law claims that preempted and those that survive, the Sixth Circuit has stated:

> In deciding whether a state-law claim is too remote to be preempted by ERISA, our precedents focus on whether the remedy sought by a plaintiff is primarily plan-related. *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 453 (6th Cir. 2003). Recently, however, we have identified three categories of claims that ERISA clearly preempts: state-law claims "that (1) 'mandate employee benefit structures or their administration;' (2) provide 'alternate enforcement mechanisms;' or (3) 'bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.'" *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir.2005) ("*PONI*") (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir.1996)). With respect to claims that do not fall within these three categories, we continue to follow our

prior precedent that focuses on the nature of the remedy sought by a plaintiff. *Thurman*, 484 F.3d at 861.

"Congress did not intend . . . for ERISA to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries." *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005) (internal quotation marks and citation omitted). For example, ERISA does not preempt a breach-of-contract claim where the claim related to the "employment contract irrespective of the plan" and where the plaintiff relied on his benefits under the plan only to measure his damages under the employment contract. *Marks*, 342 F.3d at 453.

But where the cause of action is dependent on the existence of the plan, or seeks to enforce a right to benefits created by the plan, courts have had little trouble concluding that the relief sought relates to the plan, and therefore the state law claims must yield and the claimant is left to the remedies ERISA provides. *See, e.g., Aetna Health Inc. v. Davila*, 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). ERISA specifically provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[Section 1132] is relatively straightforward. If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Davila*, 542 U.S. at 210, 124 S.Ct. 2488.

■ In bringing his state law claims, the plaintiff seeks payment of his pension benefits, no more and no less. A decision in his favor under any one of those claims would bind the plan fiduciary and amount to a regulation of the plan. "ERISA preempts in that situation because the state-law contract claim would bind fiduciaries to particular choices, thereby functioning as a regulation of the ERISA plan." *Hutchison v. Fifth Third Bancorp.*, 469 F.3d 583, 587–88 (6th Cir.2006). As the Sixth Circuit explained,

> it does not matter whether plaintiffs cite a different body of law to support their cause of action (state tort or contract law versus ERISA fiduciary responsibility) or whether the relief that plaintiffs seek is different from the relief that ERISA affords (damages for personal injury or breach of contract versus plan benefits under ERISA). As long as ERISA exclusively regulates the activity (deciding whether to award benefits), ERISA prevents the distinct state law tort scheme from superimposing an extra layer of regulation on top of the ERISA-regulated plan benefit determination.

*Id.* at 588.

Because the plaintiff's suit against the plan fiduciary seeks the payment of benefits created and measured by the terms of the plan, the state law claims relate to the plan and are preempted. The plaintiff may seek his remedy under section 1132(a)(1)(B), upon which Count I of the complaint is based. Counts II, III, IV, and VI, however, must be dismissed.

### B.

■ In Count V of the complaint, the plaintiff alleges that he has been deprived of his property without due process of law because of the defendant's actions. It is well recognized that the Constitution protects citizens from infringement of their rights by government and state actors, not by private parties. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 156, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (recognizing that "most rights secured by the Constitution are protected only against infringement by governments") (citing *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 349, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Civil Rights Cases,* 109 U.S. 3, 17–18, 3 S.Ct. 18, 27 L.Ed. 835 (1883)). The complaint does not suggest that the defendant is a state actor.

■ At oral argument, plaintiff's counsel stated that he included this count as a precautionary measure, suggesting that he would press this claim if his ERISA count was not found to afford relief. He theorized that if his section 1132 claim failed, then he would be able to prove government action because the inability to obtain relief would be attributable to the government's failure to furnish sufficient remedial measures. As dubious as this theory is, it still does not account for the fact that the defendant is not a state actor. To establish liability under the Due Process Clause, the plaintiff must prove that the deprivation of rights was caused by a person acting under color of state law. *Wittstock v. Mark A. Van Sile, Inc.,* 330 F.3d 899, 902 (6th Cir.2003). Count V of the complaint does not state a valid claim for relief because of the plaintiff's failure to plead this essential element.

### C.

Count VII of the complaint is based on the Racketeer Influenced and Corrupt Organizations Act. RICO's civil remedy provision states that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee...." 18 U.S.C. § 1964(c).

One subsection of section 1962 that apparently is alleged in this case makes it "unlawful for any person employed by or associated with any enterprise engaged in" activities affecting "interstate or foreign commerce ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Id.* § 1962(c).

It appears from the complaint that the plaintiff contends that the policy of the plan fiduciaries to enforce the terms of the plan requiring a delay in the eligibility for benefits of any worker who performed work in a non-union capacity for an employer within the jurisdiction of a union amounts to a pattern of racketeering activity. The pertinent portions of the complaint state:

28. Defendant's seizure of Plaintiff's retirement benefits is not dependent on the work that Plaintiff, individually, did at Chrysler Corporation. That is, Plaintiff's retirement benefits are forfeited whether or not he personally performed any work that Defendant's related union unilaterally determined to be in their "jurisdiction".

29. Additionally, even after Plaintiff ceased working for Chrysler Corporation (Plaintiff retired in May, 2009), Plaintiff would be subjected to an additional delay of benefits for six month's benefit for each calendar quarter in which Plaintiff worked one hour or more for Chrysler Corporation.

30. Defendant's delay of six months for as little as one hour worked is clearly punitive and is a violation of ERISA.

31. Plaintiff is subject to an eighteen year delay due to his approximately nine years working at Chrysler Corporation.

32. Defendant's policies regarding forfeiture and delay of previously earned benefits is:

a) taking of property without due process;

b) violates due process requirements of the U.S. and Michigan constitution

c) violates ERISA

d) Is a breach of fiduciary duty for the fiduciaries of the Pension Fund

e) Constitutes a pattern of conduct, used illegally to deprive participants of their previously earned benefits, which constitutes a violation of civil RICO.

33. Under the provisions of ERISA, an individual's pension must be administered for the sole benefit of the participant.

34. The loss of previously fully earned pension benefits, due to employment subsequent to earning those benefits violates ERISA, constitutes a taking of property without due process, and violates the United States Constitution, and the Constitution of the State of Michigan.

35. The actions of the fiduciaries of Defendant Sheet Metal Workers' National Pension Fund in allowing a forfeiture or delay of benefits constitutes of breach of fiduciary duty, which subjects the fiduciaries to the liabilities and penalties as provided for in ERISA.

36. The fiduciaries of Defendant Sheet Metal Workers' National Pension Fund have engaged in a regular and systematic procedure of disqualifying individuals who had full qualified for their pension benefits, and the actions of the fiduciaries in so denying the benefits constitutes a violation of the RICO Act.

Compl. 28–36.

 "A violation of § 1962(c), the section on which [the plaintiff] relies, re-

quires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495–96, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (footnote omitted). In pleading the pattern of racketeering activity, at least two predicate acts are necessary (although not necessarily sufficient). *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 354 (6th Cir.2008) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238–43, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). When the predicate acts are based on fraud, Rule 9(b)'s heightened pleading requirement applies. *Id.* at 356 n. 4. At the minimum, the complaint alleging a RICO claim must state "the nature of the fraud which gives rise to the predicate offense." *Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir.1987). Under Rule 9(b), "[i]n alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). To satisfy the rule, a party must " 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud.' " *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993) (quoting *Ballan v. Upjohn Co.*, 814 F.Supp. 1375, 1385 (W.D.Mich.1992)); *see also Vild v. Visconsi*, 956 F.2d 560, 567 (6th Cir.1992); *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.1984) (holding that as to each predicate act, the plaintiff must allege "the time, place and contents of the misrepresentation(s)").

▬▬▬ Moreover, RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To make out a claim under section 1962(c), the plaintiff must plead and prove that "the 'enterprise' is the instrument through which illegal activity is conducted." *United States v. Chance*, 306 F.3d 356, 371–72 (6th Cir.2002) (citing *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 258, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)). To meet that requirement, the plaintiff must establish:

> 1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; 2) that the members of the enterprise functioned as a continuing unit with established duties; and 3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged.

*Id.* at 372 (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir.1993)).

▬▬▬ In this case, the plaintiff has fallen far short of stating the required elements for a civil RICO claim. He has not pleaded a pattern of racketeering activity. By stating that the "plan fiduciaries" engaged in a pattern of illegal activity by enforcing plan policies, he has confounded the actor and the enterprise, and he has not identified an "enterprise [that] was separate and distinct from the pattern of racketeering activity in which it engaged." Finally, he has not identified predicate acts, nor has he met the requirements of Rule 9(b) in pleading allegations of fraud.

The plaintiff stated in his answer to the motion that in lieu of dismissing the complaint, he would like leave to amend. However, the RICO claim is so deficient, and the allegations are so confused and untethered to specific sections of the RICO statute, that it would be best to assign the plaintiff to his remedies under Rule 15. If the plaintiff intends to pursue a RICO claim, he may file a motion to amend his complaint and attach the proposed amendment, so the Court and the

defendant may examine the allegations when addressing the motion. For now, however, Count VII will be dismissed because it fails to state a claim for relief.

### III.

The Court concludes that the plaintiff's state law claims are preempted by ERISA, the claim for deprivation of property without due process of law must be dismissed because the plaintiff has not alleged that the defendant is a state actor, and the RICO count fails to state a claim for which relief may be granted.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss the complaint [dkt. # 3] is **GRANTED IN PART.**

It is further **ORDERED** that Counts II through VII of the complaint are **DISMISSED.**

It is further **ORDERED** that the defendant must file an answer to Count I of the complaint **on or before March 25, 2010.**